## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KATIE ROBERTS; ROSEMARY WALKER;    )
THAD SNIDER; STACIE HARVEY;    )
HANNAH MINGUCCI; and MELISSA LEAVITT, )
           )
    *Plaintiffs,*    )
           )
vs,    )     Case No. 2:22-cv-2366-DDC-ADM
           )
BRYAN CASKEY, in his official capacity as    )
Director of Elections; SCOTT SCHWAB, in his    )
official capacity as Kansas Secretary of State;    )
DEREK SCHMIDT, in his official capacity as    )
Attorney General of the State of Kansas; and    )
LAURA KELLY, in her official capacity as    )
Governor of the State of Kansas,    )
           )
    *Defendants.*    )
_____)

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

      Defendants Bryan Caskey, Scott Schwab, Derek Schmidt, and Laura Kelly, each sued in their official capacities and acting by and through their undersigned counsel, respectfully move to dismiss Plaintiffs' Verified Petition for Writ of Mandamus (Dkt. 1) based on (i) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and (ii) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### I.  Introduction

      Plaintiffs' pro se Complaint (incorrectly denominated a Petition) lodges various, untimely grievances about the 2020 General Election and the 2022 Primary Election and further seeks to upend the entire voting process for the upcoming 2022 General Election.  Difficult to decipher and filled with speculation and nonsensical allegations, the Petition requests a writ of mandamus from this Court ordering the named Defendants to do the following:

1.      Decertify the 2020 General Election;
2.      Re-run the 2020 Presidential election, using exclusively paper ballots, on a single election day, with live-streamed hand-counting;
3.      Ensure that none of the voting systems or data from the 2020 General Election be tampered with or deleted;
4.      Remove all electronic voting machines from all Kansas counties (except one for each precinct for voters with disabilities) for future elections;
5.      Require all future elections to be held on a single day, with no votes counted before or after that day; and
6.      Eliminate drop boxes that are not located at polling places.

Plaintiffs allege that flaws in the State's electronic voting machines and election procedures require this Court to take these drastic measures.  In particular, Plaintiffs claim that: (1) the State uses uncertified electronic voting systems; (2) hardware and software vulnerabilities plague the State's electronic voting systems, including susceptibility to hacking, third-party rigging, vote flipping, vote fractionalizing, and foreign interference; (3) the State's electronic voting systems have unacceptably high error rates; and (4) the  use of ballot drop boxes violates Kansas law.  If the Court fails to address these issues, Plaintiffs claim, "the elections will continue to be insecure [sic], unfair, and lack transparency by election clerks and election commissioners."  Pet. ¶ 9.

Numerous jurisdictional barriers preclude the Court from entertaining any of Plaintiffs' requests.  Even if Plaintiffs could overcome those jurisdictional hurdles, however, the Petition fails to state a claim upon which relief can be granted.  Accordingly, the Petition must be dismissed.

## II.   Legal Standards Governing Motions to Dismiss

### A.      Rule 12(b)(1): Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)."  *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012).  When a court is confronted with a motion invoking both Rule 12(b)(1) and 12(b)(6), "the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits

of the case under Rule 12(b)(6)." *Blain v. Wyandotte Cnty. Detention Ctr.*, No. 20-2043, 2021 WL 492257, at *1 (D. Kan. Feb. 10, 2021) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). "Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). When a motion challenges the sufficiency of a complaint's allegations, as in this case, "the court must accept all such allegations as true." *Frank v. Kan. Dep't of Agriculture*, No. 19-1054, 2019 WL 2393008, at *3 (D. Kan. June 6, 2019). If a defendant challenges the actual facts alleged, "the court has discretion to allow affidavits and other documents to resolve factual disputes." *Id*.

Federal courts are courts of limited jurisdiction. *Id*. Therefore, "a presumption exists against jurisdiction," and "'the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Blain,* 2021 WL 492257, at *1 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Although pro se litigants' pleadings are generally held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court "should not supply additional factual allegations to round out a pro se plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Moreover, "[a] pro se litigant's vague and conclusory allegations that his federal constitutional rights have been violated does not entitle him to a day in court, regardless of how liberally a court construes such pleadings." *Sturgell v. Coffman*, No. 16-cv-01637, 2016 WL 9443724, at *2 (D. Colo. Sept. 21, 2016) (citation omitted).

**B.      *Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim***

To adequately state a viable cause of action, Plaintiffs' Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating whether this standard is met, Plaintiffs must assert "enough facts to state a claim to relief that is plausible on its face," and Plaintiffs must "nudge [their] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2006). The Complaint also must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 550.  Equally insufficient is the "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). A claim has "facial plausibility" only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Rule 12(b)(6), this Court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan-Arapahoe, LLP v. Bd. of Cnty. Com'rs of Cnty. of Arapahoe.*, 633 F. 3d 1022, 1025 (10th Cir. 2011).  But this general rule is inapplicable where a plaintiff's allegations are simply legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). As the Supreme Court observed, "[w]here a Complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotations omitted).

### III.   Argument

**A.      *This Court Lacks the Authority to Issue a Writ of Mandamus.***

Plaintiffs' Petition seeks a writ of mandamus ordering the named State officials to take certain actions related to the 2020 General election and the upcoming 2022 General Election.  The

Court has no authority to grant such a writ here.  "The only federal statute concerning the federal district court's authority to issue writs of mandamus is 28 U.S.C. § 1361." *Schwarzer v. Shanklin*, 2019 WL 1150756, at *3 (E.D. Tex. Mar. 13, 2019).  Per that statute, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel *an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff."  28 U.S.C. § 1361 (emphasis added).  But a federal district court has no jurisdiction under this statute to compel *state officials* to perform any duty owed to a plaintiff, particularly when that duty arises under state law.  *Stevens v. Sheriff of El Paso Cnty.*, 15 F. App'x 740, 742 (10th Cir. 2001).  Defendants – all State officials – are thus not subject to this Court's mandamus authority.  *Rivers v. King*, 23 F. App'x 905, 908 n. 4 (10th Cir. 2001).

### B.        Plaintiffs Lack Standing.

Equally fatal to Plaintiffs' suit is their complete lack of constitutional standing.   Whether a plaintiff has standing to maintain a lawsuit is an element of subject matter jurisdiction.  *Peck v. McCann*, 43 F.3d 1116, 1124 (10th Cir. 2022).  As the party invoking the Court's jurisdiction, the burden is on Plaintiffs to demonstrate they have standing to bring their lawsuit.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021).

Article III of the Constitution limits federal judicial power to the resolution of "Cases" and "Controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  In simple terms, a plaintiff must be able to show a personal stake in the matter warranting the invocation of the federal judiciary's authority. *Raines v. Byrd*, 521 U.S. 811, 819 (1997).  The "'irreducible constitutional minimum' of standing consists of three elements."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).  Specifically, a plaintiff must show that (1) he suffered an injury in

fact, (2) the injury is fairly traceable to the challenged conduct of the defendant, and (3) the injury is likely to be redressed by a favorable judicial decision." *Id.*

With regard to the first element, a plaintiff must prove the "invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Particularized" injuries are those that affect a plaintiff in "a personal and individual way." *Spokeo*, 578 U.S. at 339. While a showing of particularization is necessary to establish an injury in fact, it is not sufficient. *Id.* An injury must also be "concrete," meaning it must be "real" and not "abstract." *Id.*

Plaintiffs have alleged no facts showing how the use of electronic voting machines or drop boxes affects them *personally* and *individually*. Nor do they allege any facts suggesting that they were uniquely harmed by the results or voting processes employed in prior elections. Instead, they assert generalized grievances that are "plainly undifferentiated and common to all members of the public." *Lujan*, 504 U.S. at 575 (citing *United States v. Richardson*, 418 U.S. 166, 176-77 (1974)). Nothing in the allegations is particularized to them. The law is well settled that a plaintiff has no standing to seek redress for a generalized grievance that "no more directly and tangibly benefits him than it does the public at large." *Id.* at 573-74.

Moreover, a subjective apprehension of what may have happened or will happen is insufficient for standing. *See Finstuen v. Crutcher,* 496 F.3d 1139, 1144 (10th Cir. 2007). "In a plea for injunctive relief, a plaintiff cannot maintain standing by asserting an injury based merely on 'subjective apprehensions' that the defendant might act unlawfully." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983)).

### 1. Plaintiffs' Petition asserts nothing more than generalized grievances, not a particularized injury in fact.

Plaintiffs are unable to meet their burden to show an injury in fact. Their Petition alleges nothing but generalized grievances, none of which are particularized to Plaintiffs. They theorize that, because the State's electronic voting systems are not certified up to the standard that Plaintiffs believe should be imposed, there could be errors in the tabulation of votes and the accuracy of electoral outcomes could be at risk. Even if that was true, and it is categorically not, such abstract and non-particularized allegations would not suffice to confer subject matter jurisdiction on the Court.

"A person's right to vote is individual and personal in nature, and voters must allege facts showing disadvantage to themselves as individuals to have standing to sue." *Iowa Voter Alliance v. Black Hawk Cnty.*, 515 F. Supp.3d 980, 990 (N.D. Iowa 2021). Generalized claims suggesting that the integrity of an election has been compromised are insufficient to establish a particularized harm. *See id.* ("While maintaining the integrity of elections is fundamental to a functioning democratic system and is a compelling government interest, the injury plaintiffs claim is abstract and not particularized to them."). In *Iowa Voter Alliance*, the plaintiffs argued that the counties' use of private, third-party grants to fund an election "burdened their right to vote by compromising the integrity of the election." *Id.* They failed to allege, however, how their individual ability to cast a vote and have it counted was burdened. *Id.* That omission, the Court held, was fatal to their standing. *Id.*; *see also Stein v. Cortés*, 223 F. Supp.3d 423, 432 (E.D. Pa. 2016) (finding plaintiff "has not alleged that his vote was inaccurately recorded or tallied in the final Pennsylvania vote count" and his "allegation that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute injury-in-fact.").

So, too, here.  Plaintiffs do not identify how their individual ability to cast a vote and have it counted is burdened by electronic voting machines and drop-boxes.  The Petition amounts to nothing more than a hodge-podge mini treatise of *potential* issues with electronic voting machines that Plaintiffs apparently believe the State must disprove.  No particularized harm is identified nor can one be inferred.

### 2.  Plaintiffs' alleged injuries are speculative, not concrete.

Not only have Plaintiffs failed to identify a particularized injury, they have also failed to plead a concrete injury, both of which must exist to establish standing.  *Spokeo*, 578 U.S. at 339.  Plaintiffs' Petition is mostly a long-winded summary of what "can" or "may" go wrong with electronic voting systems.  But critically, they fail to plead that these "possibilities" have actually occurred in Kansas, or more importantly, to their own votes.  For example, Plaintiffs allege that "Petitioner, Thad Snider, *believes* he was a witness to an illegally conducted post[-]election audit process for the 2022 primary election."  Pet. ¶ 6(a) (emphasis added).  They later add, "Petitioners and voters in Kansas *feel* their vote was abridged."  Pet. ¶ 40 (emphasis added).  Mere "beliefs" and "feelings" do not constitute a "concrete" injury in fact.

In their lengthy Petition, Plaintiffs allege a single instance of machine irregularity that was discovered (and quickly rectified) in a post-election audit of the 2022 Primary Election in one Cherokee County Commissioner's race.  Pet. ¶ 129.  Plaintiffs use this example to suggest that other errors throughout the State might go undetected and affect election results.  But the Petition is devoid of any allegation that any such error actually occurred in any other Kansas race, or (most importantly) that such error affected them personally and individually.  Instead, Plaintiffs merely pose a rhetorical question about whether other counties might have experienced a similar problem.  Mere speculation such as this is insufficient to establish a concrete injury-in-fact for standing.

This case is highly similar to a recent case before the U.S. District Court in Arizona which involved nearly identical allegations and requested nearly the same relief.  *See Lake v. Hobbs*, No. CV-22-00677, 2022 WL 3700756 (D. Ariz. Aug. 26, 2022).  The plaintiffs there argued that Arizona's electronic voting machines "created unjustified new risks of hacking, election tampering, and electronic voting fraud."  *Id*. at *2.  They alleged many of the same vulnerabilities in Arizona's voting machines as Plaintiffs have raised about Kansas' machines. *Id*. And, as Plaintiffs do here, the *Lake* plaintiffs claimed that the only way to overcome the alleged security issues was for the court to implement a voting procedure that used, *inter alia*, paper ballots, which were hand-counted in full view of multiple recording and streaming devices.  *Id*. at **3-4.[1]

The *Lake* court found that the plaintiffs were unable to establish an injury in fact based on the sheer speculation of their allegations.  The court noted the long chain of hypothetical contingencies that would have to transpire for any harm to occur, including:

> (1) The specific voting equipment used in Arizona must have "security failures" that allow a malicious actor to manipulate vote totals; (2) such an actor must actually manipulate an election; (3) Arizona's specific procedural safeguards must fail to detect the manipulation; and (4) the manipulation must change the outcome of the election.

*Id*. at *9.  The court further found that "even if the allegations in Plaintiff's [sic] complaint were plausible, their alleged injury is not 'certainly impending' as required by *Clapper*."  *Id*. (citing *Clapper*, 568 U.S. at 409.

Other courts faced with similar "suspicions" about voting processes have likewise found no concrete injury based on naked assertions.  *See, e.g., Texas Voters Alliance v. Dallas Cnty.*, 495 F. Supp.3d 441, 452-53 (E.D. Tex. 2020) (finding no injury in fact based on plaintiffs' beliefs that defendants' grants impermissibly influenced the election as they were based on nothing more

---

[1]  Interestingly, Plaintiffs cite testimony from the *Lake* case to support their allegation that voting machines can be hacked.  Pet. ¶ 137.

than "naked assertions"); *Samuel v. Virgin Islands Joint Bd. of Elections*, Civ. No. 2012-0094, 2013 WL 842946, at *5 (D.V.I. Mar. 7, 2013) (dismissing plaintiffs' 42 U.S.C. § 1983 claims for lack of injury-in-fact, finding that "[a]lthough Plaintiffs 'believe' Defendants have infringed on 'voters' fundamental right to vote, fair and transparent elections and to equal protection,' . . . these are conclusory allegations without factual support"); *Schulz v. Kellner*, Case No. 1:07–CV–0943, 2011 WL 2669456, at *7 (N.D.N.Y. July 7, 2011) (finding no concrete or particularized injury where plaintiffs' allegations of machine error and human fraud resulting from defendants' voting procedures amounted to nothing more than "generalized grievances").

Furthermore, to the extent Plaintiffs are attempting to protect the rights of others, they have no standing.  *See* Pet ¶ 6(c)(2) ("This harm is shared by *all Kansas voters* who vote on uncertified election equipment.") (emphasis added).  "[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 42 U.S. 490, 499 (1975)).

### 3.  Plaintiffs' claims are not redressable by the Defendants.

Plaintiffs' quest for standing suffers from still another infirmity:  they have sued the wrong parties.  Although Plaintiffs are correct that the Secretary of State (the "Secretary") *certifies* voting machines, the Secretary does not own or possess such machines.  Voting machines are owned and maintained by individual counties.  K.S.A. 25-4407, 4408.  Although this Court would ultimately lack the authority under the Eleventh Amendment to prohibit the use of voting machines as the mode of voting is a matter of state law, *see* Kan. Const. Art. 4, § 1, the proper party to such a suit would not be the Defendants, but individual counties.

Likewise, Defendants do not own or possess drop boxes.  They are owned by the counties – and the counties alone – determine whether to use them.  *See* K.S.A. 25-1124(a) ("the ballot

envelope shall be mailed or otherwise transmitted to the county election officer").  Any injunction issued against any of the named Defendants with respect to the use of voting machines or drop boxes, therefore, would be ineffectual.

### C.   *The Eleventh Amendment Bars Plaintiffs' Claims.*

In addition to their lack of standing, Plaintiffs' claims are also foreclosed by the Eleventh Amendment.  "The Eleventh Amendment renders a state 'immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'"  *Higganbotham v. Okla. ex rel. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).  "'[S]tates may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."  *Collins v. Daniels*, 916 F.3d 1302, 1315 (10th Cir. 2019). This state sovereign immunity also precludes suits against state officials in their official capacities. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020).

The Supreme Court recognized a narrow exception to this general rule in *Ex parte Young*, 209 U.S. 123, 164–65 (1908), which allows "suits for prospective . . . relief against state officials acting in violation of *federal* law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (emphasis added).  But *Ex Parte Young* does not apply here.

Regarding Plaintiffs' request that the Court de-certify/invalidate prior elections going back to 2017 and order a replacement election for the one held in November 2020 (with presumably the same candidates and issues on the ballot), *see* Pet. at 70 and ¶ 95(a), the law is clear that *Ex Parte Young* affords no space for federal jurisdiction over suits seeking retrospective relief for past wrongs. *See Papasan v. Allain*, 478 U.S. 265, 277-78 (1986) (*Ex Parte Young* is "focused on

cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.").

As for Plaintiffs' request that the upcoming 2022 General Election be conducted without electronic voting machines and drop-boxes, that, too, is a matter over which this federal court has no jurisdiction due to the Defendants' Eleventh Amendment immunity.  The reason is that the sole legal foundation for Plaintiffs' claims is Kansas *state law*.  *See Johns v. Stewart*, 57 F.3d 1544, 1553 (10th Cir. 1995) "[T]he Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law.").  Despite Plaintiffs' citations to certain federal laws and the Constitution, methods of voting are governed exclusively by state law.  Federal courts across the country have consistently held that there is no constitutional right to a particular voting method.  *See Lake*, 2022 WL 370756, at *10; *Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003) ("Nothing in the Constitution" prohibited the use of touchscreen voting machines as an alternative to paper ballots, and noting that it is "the job of democratically-elected representatives to weigh the pros and cons of various balloting systems."); *Pettengill v. Putnam Cnty. R-1 Sch. Dist.*, 472 F.2d 121, 122 (8th Cir. 1973) ("[The] complaint asks the federal court to oversee the administrative details of a local election.  We find no constitutional basis for doing so."); *Green Party of N.Y. v. Weiner*, 216 F. Supp. 2d 176, 190-91 (S.D.N.Y. 2002) (finding that the use of voting machines is "for the elected representatives of the people to decide[.] There is no constitutional right to any particular method of registering and counting votes.").

1.  Electronic Voting Machines

With respect to electronic voting machines, Plaintiffs contend that Kansas' machines have not been properly certified by the Secretary and thus must be prohibited. Pet. ¶¶ 95, 140.  Although Plaintiffs' claim ultimately fails, *see infra*, the basis for the claim is that the Secretary violated his

duties under K.S.A. 25-4404 and 25-4406 (*state laws*) by certifying voting machines that did not meet voluntary guidelines issued by the Election Assistance Commission ("EAC").  Pet. ¶¶ 47-52, 85-98, 112.

Kansas law requires the Secretary to certify voting systems prior to their use in elections, K.S.A. 25-4404, and specifies the requirements that the machines must meet before the Secretary can certify them.  K.S.A. 25-4406.  Citing K.S.A. 25-4406(m), Plaintiffs theorize that the statutory language requiring voting systems to "meet the requirements of the help America vote act ["HAVA"] and other federal statutes and regulations governing voting equipment" means that the machines must meet *voluntary guidelines* published by the EAC.  Pet. ¶ 112.  In other words, the predicate for Plaintiffs' requested relief regarding the 2022 General Election is that the Secretary failed to properly perform the certification requirements of K.S.A. 25-4406(m).  Because this is an alleged violation of *state law*, the Eleventh Amendment negates Plaintiffs' right to any relief in this Court.

Furthermore, even if Plaintiffs' claims could be heard in federal court as to the upcoming General Election, the claims would fail anyway because Plaintiffs misunderstand the requirements of K.S.A. 25-4406(m).  Plaintiffs argue that "HAVA creates new mandatory minimum standards for states to follow."  But Plaintiffs conflate *HAVA's minimum standards* with the *EAC's voluntary guidelines*.  The HAVA standards are found at 52 U.S.C. § 21801.  Kansas law, specifically K.S.A. 25-4406(m), requires the Secretary to ensure the State's voting systems meet those requirements, which they do.  Plaintiffs' Petition, however, focuses on irrelevant EAC voluntary guidelines, which Plaintiffs refer to as "testing standards."  Pet. ¶ 86.  As the name of the guidelines indicate, these guidelines are *voluntary* and, to the extent they have any applicability in the election context, it is to laboratory testing certifications issued by the EAC.  *See* 52 U.S.C. § 20971(a)(1); Pet. ¶ 68.

HAVA also explicitly provides that States are *not* required to use federally certified laboratories for voting system certifications either.  52 U.S.C. § 20971(a)(2).  And Kansas law neither requires voting systems to be compliant with EAC guidelines nor mandates laboratory testing.  *See* K.S.A. 25-4406 (setting forth requirements for electronic voting systems in Kansas).  In sum, because Plaintiffs' electronic voting machine certification theory is rooted in alleged violations of state law, the Eleventh Amendment bars the claim in this forum.

### 2.  Drop Boxes

With respect to the allegations regarding drop boxes, Plaintiffs argue that *Kansas law* does not permit the use of drop boxes.  Pet. ¶¶ 149-154 (citing K.S.A. 25-1122 and 25-1124).  While Plaintiffs are not likely to succeed on the merits as to this claim either, the Eleventh Amendment likewise precludes this Court from hearing the claim because Defendants are immune to suit in federal court from claims that they are violating state law.  *Gorenc v. Klaassen*, 421 F. Supp.3d 1131, 1147 (D. Kan. Sept. 2019).

### D.      HAVA provides no private right of action.

To the extent Plaintiffs are raising issues of federal law under HAVA, rather than alleging violations of state law, Plaintiffs' motion for a TRO still must be denied because HAVA does not provide a cause of action to enforce the cited provisions.  For purposes of the relevant HAVA provisions involved in their TRO Motion, Plaintiffs' Petition cites 52 U.S.C. §§ 21081(5) (HAVA Section 301), 20922 (HAVA Section 202), and 20971 (HAVA Section 231).  Pet. ¶¶ 67-68, 94, 130, 143.  None of these provisions have a private right of action.

Congress enacted HAVA in the wake of the 2000 presidential election. "HAVA serves to improve access to and the administration of federal elections." *Texas Voters Alliance*, 495 F. Supp. 3d at 458.  In *Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) (per curiam), the Supreme

Court summarily vacated a TRO because the parties who obtained it were "not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 [of HAVA] in an action brought by a private litigant." *Id.* at 5. The Court supported its conclusion by citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002), and *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), two cases in which it had previously emphasized that Congress must create private rights of action. *Id.*  For HAVA, Congress explicitly granted enforcement powers to the Attorney General and the states.  52 U.S.C. §§ 21111-21112.  It did *not* specify that private parties have the right to enforce HAVA.

Federal courts faced with similar attempts to assert claims based on alleged HAVA violations have likewise found no private right of action.  *See, e.g., American Civil Rights Union v. Philadelphia City Com'rs*, 872 F.3d 175, 184-85 (3rd Cir. 2017) ("HAVA does not include a private right of enforcement. . . [it] only allows enforcement via attorney general suits or administrative complaint."); *Iowa Voter Alliance v. Black Hawk County*, No. C20-2078, 2020 WL 6151559, at *2   (N.D. Iowa Oct. 20, 2020) (Congress did not create a HAVA private right of action); *Minn. Voters Alliance v. City of Minneapolis*, Civ. No. 20-2049, 2020 WL 6119937, at *6 (D. Minn. Oct. 16, 2020) ("Because HAVA does not provide Plaintiffs a private right of action, they lack standing to assert a claim under HAVA."); *Taylor v. Onorato*, 428 F. Supp.2d 384, 387 (W.D. Pa. 2006) (HAVA does not provide a private right of action to enforce HAVA § 301 [52 U.S.C. § 21081], nor does it create a federal right enforceable against state officials under 42 U.S.C. § 1983); *Samuel*, 2013 WL 842946, at *6 (finding no private right of action, either directly or via 42 U.S.C. § 1983, for plaintiffs' alleged HAVA claims).[2]

---

[2] Even if Plaintiffs could bring a HAVA claim either individually or on behalf of others, HAVA's provision concerning EAC-certified voting machines is "permissive, not mandatory." *Samuel*, 2013 WL 842946, at *7 ("HAVA does not require Defendants to use EAC-certified voting machines and thus there would be nothing to enforce."); *see also* 52 U.S.C. § 20971(a)(2) ("At the option of a State, the State may

Under *Gonzaga*, the Supreme Court explained that in order to determine whether a statute created a private right of action requires first determining "whether Congress *intended to create a federal right*." *Gonzaga Univ.*, 536 U.S. at 283 (emphasis in original). "[W]here a 'statute by its terms grants no private rights to any identifiable class,'" the Supreme Court has found that no private right of action was conferred. *See id.* at 283-84 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979)). To confer a private right of action, the statute's "text must be 'phrased in terms of the persons benefited.'" *Id.* at 284 (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 692, n.13 (1979)). Such statutes should have "an *unmistakable focus* on the benefited class." *See id.* (*quoting Cannon*, 441 U.S. at 692, n.13) (emphasis in original). Furthermore, even if a statute does have rights-creating terms, that is not enough. A plaintiff must show not only that Congress intended to create "a private *right* but also a private *remedy*." *Id.* (quoting *Alexander*, 532 U.S. 275 at 286) (emphasis in original).

The relevant HAVA provisions cited by Plaintiffs do not contain rights-creating language to any class of persons. HAVA Section 301 sets "voting systems standards" for the States to follow. 52 U.S.C. § 21081. The provision which Plaintiffs cite merely specifies an error rate for ballot tabulators.[3] *Id.* § 21081(a)(5). HAVA Section 202 provides the duties of the EAC, including

---

provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the Commission under this section.").

[3] Plaintiffs' "error rate" argument focuses on discrepancies between the hand recount of the recent "Value Them Both Vote" proposed constitutional amendment and the tabulator results. However, those are two different methods for counting ballots and not subject to the same standards. The "error rate" for tabulators refers to whether a tabulator is accurately counting votes that are properly cast by voters. 52 U.S.C. 21081(a)(5). In contrast, a recount is merely attempting to ascertain the results of an election, i.e., the winner. *See* K.S.A. 25-3107(a)(1) ("In the event that the candidate requesting the recount is declared the winner . . . or a question submitted is overturned, no action shall be taken on the person's bond[.]"). The recount board is not attempting to determine whether or why discrepancies exist between its recount totals and tabulator totals. Such discrepancies in vote totals could be, and usually are, due to the way that a voter marked a ballot (voter error which is not factored into a tabulator's error rate, *see* 52 U.S.C. 21081(a)(5)), the way the recount board discerns voter intent when reviewing ballots, or error by the counting board itself when conducting the recount. The purpose of the recount board is to determine whether the *outcome* of an election was correct, not to determine whether its recount numbers precisely match a tabulator's results or

the drafting of voluntary guidelines. 52 U.S.C. § 20922. And HAVA Section 231 merely requires the EAC to provide for testing and certification of voting equipment and to certify laboratories for the same. 52 U.S.C. § 20971(a), (b). None of these provisions contains rights-creating language that would permit Plaintiffs to maintain a cause of action. And even if they did, the fact that HAVA provides for its own enforcement mechanisms counsels against a finding that Congress intended to create a private right of action to enforce the provisions cited by Plaintiffs. *See* 52 U.S.C. §§ 21111-21112.

### E.   *Burford Abstention Is Appropriate in this Case.*

This is also a case in which *Burford* abstention is appropriate. The *Burford* abstention doctrine, the origins of which are found in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), provides that, where timely and adequate state-court review is available, a federal court may decline to interfere with the proceedings or orders of state administrative agencies if the federal suit would: (1) present difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; *or* (2) be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Quackenbush v. Allstate Ins. Co.*, 517 US. 706, 726-27 (1996) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)). Although the Supreme Court has suggested that this doctrine is generally reserved for extraordinary circumstances, *id.* at 726, it has also highlighted *Burford*'s importance in preserving principles of federalism and comity, *Growe v. Emison*, 507 U.S. 25, 32 (1993), and in allowing states to retain local control over difficult

---

to determine why its recount results did not match a tabulator. With the Value Them Both amendment, the recount confirmed that the proposed amendment failed. There was no reason for the recount board to then attempt to determine why minor vote total discrepancies existed between the hand recount and the tabulator when the discrepancies were not enough to change the outcome of the election. Thus, Plaintiffs' "error rate" theory has no merit.

questions of state law bearing on policy problems of substantial import. *Quackenbush*, 517 U.S. 728 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

Kansas has a specific statutory scheme for requesting election recounts and raising election contests (both of which are terms of art). With respect to recounts, Kansas law mandates that a recount be requested by either 5 p.m. on the day following the meeting of the county board of canvassers or by 5 p.m. on the second Friday following the election, depending on the type of recount. K.S.A. 25-3107(b), (c). Plaintiffs obviously did not request a state-wide hand-recount of the entire election by the statutory deadline. Their pursuit of such relief in this case, therefore, not only comes far too late, but it also strongly counsels against this federal Court from involving itself in the dispute.

With respect to their effort to challenge the outcomes of prior elections based on alleged fraud or error in the vote counting process, Plaintiffs likewise failed to follow the requisite statutory process. As registered voters with a right to vote in the General Election, Plaintiffs could have filed a notice of an election contest in Shawnee County District Court within five days following publication of the results of the 2020 General Election and/or the "Value Them Both" amendment vote held in connection with the 2022 Primary. *See* K.S.A. 25-1435-1436, 1438-1439. The State Board of Canvassers met on November 30, 2020 (regarding the 2020 General Election), and September 1, 2022 (regarding the "Value Them Both" amendment vote), and official results were published on the Secretary's website the same day. *See* K.S.A. 25-3205; K.S.A. 25-3206 (times for meetings of the state board of canvassers); https://sos.ks.gov/elections/elections-results.html (publication of election results). Plaintiffs, however, filed no election contests, and their failure to do so renders them unable to contest those prior elections now. By seeking a remedy in federal

court well past the applicable deadline, Plaintiffs are effectively attempting to use this Court to make an end-run around the State's election procedures.

The Tenth Circuit's invocation of *Burford* abstention in *Robert-Gay Energy Enterprises, Inc. v. State Corporation Commission*, 753 F.2d 857 (10th Cir. 1985), is instructive. In that case, the plaintiff sought an allowable bonus on an oil well from the Kansas Corporation Commission (KCC). After the KCC denied the plaintiff's application, the plaintiff sued in federal court, seeking injunctive relief and alleging that the KCC's decision constituted a taking of property without just compensation in violation of the Fourteenth Amendment. *Id.* at 858-59. On appeal, the Tenth Circuit held that *Burford* abstention was proper because of a state law directing that "any action for judicial review of any . . . decision of the [KCC] may be brought against the [KCC] in the district court of any county in the state wherein the property affected thereby is located." *Id.* at 860. "If adequate state court review of an administrative order based upon predominantly local factors is available," the Tenth Circuit reasoned, then "intervention of a federal court is not necessary for the protection of federal rights." *Id.* (citing *Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 349 (1951)). Given that the same principles are applicable to this case because adequate procedures are in place under Kansas law for Plaintiffs to challenge elections, Defendants respectfully suggest that this Court abstain from considering Plaintiffs' purported constitutional causes of action.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Verified Petition for Writ of Mandamus based on lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully Submitted,

By: /s/ Bradley J. Schlozman
Bradley J. Schlozman (KS Bar #17621)
Amy M. Decker (KS Bar #18739)
**HINKLE LAW FIRM LLC**
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206
Tel.: (316) 267-2000
Fax: (316) 630-8466
E-mail: bschlozman@hinklaw.com
E-mail: adecker@hinklaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on October 20, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the e-mail addresses on the electronic mail notice list.  I also certify that paper copies of the foregoing will be mailed to each of the pro se Plaintiffs via first class mail, postage prepaid.


By: /s/ Bradley J. Schlozman_____